**Joe Vernon SEARS, an individual, in person and for all other persons similarly situated, Plaintiffs-Appellees,**

**and**

**The Brotherhood of Sleeping Car Porters, and Ray E. Landrum, et al., Intervenors-Plaintiffs,**

**v.**

**The ATCHISON, TOPEKA & SANTA FE RAILWAY, COMPANY, Defendants,**

**United Transportation Union, successor to Brotherhood of Railway Trainmen, a labor organization, Defendants-Appellants,**

**Mildred COLLINS, Executrix of the Estate of James Collins, Jr., Deceased, Plaintiff-Appellee,**

**v.**

**UNITED TRANSPORTATION UNION, a successor to Brotherhood of Trainmen, a labor organization, Defendant-Appellant.**

**Nos. 82–2549, 82–2550, 83–1726 and 83–1736.**

United States Court of Appeals, Tenth Circuit.

Dec. 10, 1984.

---

William Sitzer, St. Louis, Mo. (William B. Smith of Dubail, Judge, Kilker, O'Leary & Smith, St. Louis, Mo., and E. Lee Kinch of Ratner, Mattox, Ratner, Ratner & Barnes, Wichita, Kan., with him on the brief), for defendant-appellant United Transp. Union.

Terry G. Paup, Wichita, Kan. (Jim L. Lawing, Wichita, Kan., and Lee H. Woodard of Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, Kan., with him on the brief), for plaintiffs-appellees.

Before SETH, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The United Transportation Union appeals from the district court's order on remand concerning damages in this Title VII action. Appellee Joe Sears filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) in March 1966 against the Atchison, Topeka & Santa Fe Railway (Santa Fe) and the United Transportation Union's predecessor. Once the EEOC issued a right to sue letter, Sears filed this class action on behalf of the railroad's train porters alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, based on discrimination resulting from the railroad's segregated job structure for brakemen (whites) and train porters (blacks).

The trial court ruled that Santa Fe and the union were liable to part of the class of train porters and awarded damages. *Sears v. Atchison, Topeka & Santa Fe Ry.*, 454 F.Supp. 158, 180 (D.Kan.1978) (order concerning liability); *Id.*, 19 Fair Empl.Prac. Cas. (BNA) 1007, 1014–15 (D.Kan. Oct. 23, 1978) (order concerning seniority and back pay relief). This court reviewed that decision, affirming it in part, reversing it in part, and remanded the case to the trial court to fashion a back pay award for the entire class. *Sears v. Atchison, Topeka & Santa Fe Ry.*, 645 F.2d 1365 (10th Cir. 1981). After we denied the union's petition for rehearing the United States Supreme Court denied certiorari. 456 U.S. 964

(1982). On remand the district court issued an order responding to the directives in our opinion, *Sears v. Atchison, Topeka & Santa Fe Ry.*, 30 Fair Empl.Prac.Cas. (BNA) 1084 (D.Kan. Dec. 1, 1982), from which the union has appealed.

On appeal the union asserts the following: (1) that the court of appeals erred in its prior decision in finding the union liable for back pay and attorney's fees; (2) that the district court erred in holding the union liable to class members whom Santa Fe did not have to pay under a court-approved settlement agreement between Santa Fe and the class and in not limiting the union's liability to its relative degree of fault; (3) that the district court erred in permitting Sears to represent the entire class, rather than creating a separate subclass with its own class representative to represent the train porters who had a seniority date after April 20, 1942, and who were demoted from train porters to chair car attendants pursuant to a 1959 National Railroad Adjustment Board award; and (4) that the district court erred in including a tax component in the back pay award to class members. We reject each of these contentions and affirm the district court's judgment.

I

The union contends that we must reverse our prior judgment upholding the union's liability to the class because the decision was inconsistent with four recent Supreme Court cases: *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); and *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). We will not dignify this argument by any extended discussion. We have examined the decisions and find nothing in them to convince us that we erroneously decided the earlier appeal. We also note that all of those cases were argued in the Supreme Court before it declined, on May

3, 1982, to review our prior opinion; two of the cited cases were decided before the Supreme Court denied certiorari and the other two were decided before the Court's term ended two months later. Under these circumstances we believe that if the Supreme Court had thought any of those decisions required reconsideration of our opinion, it would have granted certiorari and summarily remanded the case for our reconsideration in light of its determinations.

## II

Relatively early in this litigation Santa Fe entered into a court-approved settlement agreement with the class that covered back pay relief and attorney's fees. *See* Order Approving Compromise and Dismissal of Back Pay and Attorney's Fees Claim (Sept. 8, 1975), R. III, 1094. Santa Fe remained in the litigation for determination of issues concerning its future practices and the seniority relief to be granted to current Santa Fe employees who were members of the class. The court explicitly approved the provision in the settlement agreement releasing Santa Fe from having to pay back pay and attorney's fees to porters who retired, became disability annuitants or died prior to May 1, 1972. R. III, 1096. Paragraph 9 of the settlement order expressly provided, however, that "this Order does not affect the liability issue of the United Transportation Union for back pay relief and attorney's fees [under Title VII]." R. III, 1097. In its initial decision on damages, the district court found that Santa Fe was not liable for additional money damages to any plaintiff, beyond what it had paid in its settlement, but that the union was liable "for any additional monetary loss suffered by the train porter subclass members over and above the Santa Fe settlement...." *Sears*, 19 Fair Empl.Prac.Cas. (BNA) at 1015.

Following our decision in the first appeal, the district court ordered the union to pay relief to a class of plaintiffs that included former porters or their representatives who had retired, become disability annuitants, or died prior to May 1, 1972—persons denied payment under the settlement agreement with Santa Fe. The court rejected the union's arguments that it was unfair for the union to be held liable to these persons when Santa Fe had escaped liability. *Sears*, 30 Fair Empl.Prac.Cas. (BNA) at 1086. The union makes the same unfairness argument on appeal. It also contends that the district court should have determined the relative fault of Santa Fe and the union and required the union to pay only that proportion of the total back pay award reflecting the union's degree of fault.

There might be merit in the contentions if this were an ordinary case of joint tortfeasors who were liable to each other for contribution. *See Restatement (Second) of Torts* §§ 886A & comment m, at 337, 343–44 (1979) (listing three alternative solutions to the problem created by settlement with and release of one tortfeasor with respect to the right of other tortfeasors to seek contribution from the one released). This case is a Title VII action, however. Although the Supreme Court has never considered the situation before us, it has decided a closely analogous case. It refused to find a right of contribution for an employer held liable under Title VII against a union that was not joined in the original suit but nevertheless was partly responsible for the discriminatory treatment. *See Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 98, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981). The Supreme Court stated that it was unwilling to create a contribution remedy for a statutory violation when Congress had not manifested any intent that a right of contribution should exist. *Id.* at 94–95, 97, 101 S.Ct. at 1582–1583, 1583. *Cf. Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (antitrust defendants not entitled to contribution from coconspirators). Further, the wrong that the union committed was a separate wrong from that of the employer, defined by separate subsections of the statute. *See* 42 U.S.C. § 2000e–2(a), (c). *Cf. Dobson v. Camden*, 725 F.2d 1003, 1005–06 (5th Cir.1984) (en banc) (no problem arises requiring contribution or credit for settle-

ment in § 1983 suit when no joint liability existed between codefendants).

Surely the law should encourage settlement of Title VII disputes. If we were to hold the trial court erred in not requiring further contribution from Santa Fe, or that it should have limited the union's liability to its "share" of the fault, we would discourage settlement of these cases. Santa Fe would not have settled if it had known it would still remain liable in the event the nonsettling union defendant lost the case. Similarly, the aggrieved porters also would have been unlikely to settle with Santa Fe if they risked being made less than whole because of a subsequent court finding on the union's percentage of fault. The instant case illustrates the desirability of settlement and the cruel effect of litigation delays on older class members; more than eighteen years have passed since Sears brought his complaint to the attention of the EEOC.

The cases approving of district courts' exercise of discretion in allocating damages among nonsettling defendants, *e.g., Parson v. Kaiser Aluminum & Chemical Corp.,* 583 F.2d 132, 133–34 (5th Cir.1978), *cert. denied,* 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Myers v. Gilman Paper Corp.,* 544 F.2d 837, 851–52 (5th Cir.), *rev'd in part on other grounds,* 556 F.2d 758 (5th Cir.), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *United States v. United States Steel Corp.,* 520 F.2d 1043, 1060 (5th Cir.1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976), are not inconsistent with requiring that nonsettling defendants pay the difference between the damages paid by settling defendants and the total necessary to make the victims whole. The district court here allowed a credit against the judgment for the amount Santa Fe had already paid in its separate settlement. The union complains that because the settlement Santa Fe made appears to be a favorable one to Santa Fe the union is left with the burden of paying most of the plaintiffs' damages. Of course, under the court's order had Santa Fe settled for more than its proportionate share, the union would have benefitted by having to pay only the remaining amount necessary to make the victims whole.

Santa Fe's settlement with the class expressly provided that it did not affect the union's liability for back pay or attorney's fees. Any objections the union had to that provision should have been raised as an objection in the district court before the court approved the settlement. Instead the union waited to challenge the effect of this provision until the case was remanded after the union had been found liable, and the case had been appealed the first time. *See* Motion to Limit Damage Award (Aug. 24, 1981), R. VII, 2534–36. We hold that the district court acted properly in determining the damages chargeable against the union.

### III

The union claims that the district court erred in failing to designate a separate subclass representative for the train porters who had a seniority date after April 20, 1942, and who were demoted from train porters to chair car attendants pursuant to a 1959 National Railroad Adjustment Board award. We hold that the union has waived its right to make this objection. The union consented to the district court's original order entered August 4, 1975, certifying Joe Sears as class representative for the class comprised of "all Black Train Porters employed by Santa Fe, at any time, as a Train Porter and who have been in the employment of Santa Fe during the period from July 2, 1965, to the present." Order Determining That Action is Maintainable As Class Action, R. II, 967–68. Throughout the trial, the hearing on damages, and the first appeal, the union never objected, and must be deemed to have consented, to having Sears as class representative for all Santa Fe train porters, including those later demoted as a result of the 1959 award. *See* Pretrial Conference Order (Sept. 16, 1977), R. IV, 1687, 1695; Stipulation of Facts Subject To Objections of Relevancy and Materiality (Feb. 8, 1978), R. V, 1876, 1882–83; Brief for United Transportation Union as Appellant and In Response to Brief of Sears et al. as Cross-Appellee, No.

**1456**

78–1995, at 28–29 (filed with 10th Cir. July 19, 1979).

■ We recognize that the district court may redefine the class to include several subclasses after it has initially certified the class. *See* 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1790, at 186 (1972). The district court acknowledged in its initial decision that differences existed within the class represented by Joe Sears because some of the porters had been demoted as a result of the 1959 Award. *See Sears,* 19 Fair Empl.Prac.Cas. (BNA) at 1010. The court awarded different relief to the different groups. *Id.* at 1010–12. It also distinguished between demoted porters who had applied for transfer and/or promotion and those who had not. *Id.* at 1012. But the court's analysis was made in the context of the original certification as one class with Joe Sears as its sole representative. The union did not seek separate subclass representatives before the trial court ruled on liability and damages. Indeed, the union approved of the separate treatment and raised no objection in its first appeal to the fact that the district court had not named separate subclass representatives. *See* Brief For United Transportation Union as Appellant and In Response to Brief of Sears et al. as Cross-Appellee, No. 78–1995, at 28–29 (filed with 10th Cir., July 19, 1979). As a result, when we reviewed the district court's award of relief and ordered a different remedy, we gave no consideration to having separate subclass representatives. Instead, we suggested a method for treating the demoted porters differently in calculating back pay, to reflect their different circumstances, but all within the context of a single class represented by Joe Sears. *See Sears,* 645 F.2d at 1378–79. The union has waited too long to seek separate subclass representatives.[1] Therefore, we find no error in the district court's order denying the union's motion for separate representatives.

**IV**

■ Finally, we hold that the district court did not abuse its discretion when it included a tax component in the back pay award to compensate class members for their additional tax liability as a result of receiving over seventeen years of back pay in one lump sum. As we stated in our prior opinion, the trial court has wide discretion in fashioning remedies to make victims of discrimination whole. *Sears,* 645 F.2d at 1378; *see also Ford Motor Co. v. EEOC,* 458 U.S. 219, 230, 102 S.Ct. 3057, 3064, 73 L.Ed.2d 721 (1982); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 364, 97 S.Ct. 1843, 1869, 52 L.Ed.2d 396 (1977). A tax component may not be appropriate in a typical Title VII case. But this case presents special circumstances in view of the protracted nature of the litigation. The court-ordered back pay awards will likely place the living members of the class in the highest income tax bracket on much of the back pay they now receive. Even if the class members income average, they can now only consider the three years preceding the computation year. *See* Tax Reform Act of 1984, Pub.L. No. 98–369, § 173(a), 98 Stat. 494, 703 (1984) (to be codified at I.R.C. § 1302(c)(2)). Apparently nearly 40% of the class members have died. Estates of deceased taxpayers are not eligible for income averaging. Treas.Reg. § 1.1303–1(a). In *Blim v. Western Electric Co.,* 731 F.2d 1473, 1480 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984), we held a tax component to be inappropriate in an age discrimination case. That case involved different circumstances than the case at bar; additionally, an important factor in that decision was the liquidated damages provision of 29 U.S.C. § 216(b), providing for an automatic doubling of the back pay award to make up, in part, for the delays in receipt of payment. We believe the trial court's inclusion of the tax compo-

---

**1.** We offer no opinion as to whether separate subclass representatives would have been appro-    priate in this case.

nent was an appropriate exercise of its discretion in the instant case.

AFFIRMED.