# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 12, 2007        Decided June 29, 2007

No. 05-5439

MATTHEW F. FOGG,
APPELLEE/CROSS-APPELLANT

v.

ALBERTO GONZALES, ATTORNEY GENERAL FOR THE UNITED
STATES DEPARTMENT OF JUSTICE,
APPELLANT/CROSS-APPELLEE

Consolidated with
05-5440

Appeals from the United States District Court
for the District of Columbia
(No. 94cv02814)

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause
for appellant/cross-appellee. With him on the briefs were
*Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*,
Assistant U.S. Attorney. *Michael J. Ryan*, Assistant U.S.
Attorney, entered an appearance.

*Frank J. Costello, Jr.* argued the cause and filed the
briefs for appellee/cross-appellant.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

Concurring opinion filed by *Circuit Judge* HENDERSON.

GINSBURG, *Chief Judge*: Matthew F. Fogg sued his employer, the United States Marshals Service (USMS), for discriminating against him on the basis of his race. A jury awarded him $4,000,000 in damages; the district court remitted the award to the statutory maximum of $300,000 and Fogg made a motion for equitable relief. The court granted the motion to the extent of awarding Fogg back pay through the date of his dismissal but denied his request for front pay, expungement of his personnel record, and reinstatement. On appeal we reversed the order concerning equitable relief and remanded the matter to the district court to reconsider the issue-preclusive effect of the jury's verdict.

On remand a different district judge granted Fogg additional equitable relief in the form of back pay from the date of his dismissal to the date of the court's order, which amount the court increased ("grossed up") by 14% to offset the adverse tax consequences of a lump sum award, but again denied Fogg front pay. Both parties appeal. We now affirm both the award of back pay and the denial of front pay but reverse the district court's judgment to the extent of the "gross up."

## I. Background

The facts relevant to this appeal are set out fully in the opinion of the district court on remand, *see Fogg v. Gonzales*, 407 F. Supp. 2d 79, 81-84 (2005) (Restani, J.). In brief, this is what happened. In 1978 Fogg became a deputy U.S. Marshal in Washington, D.C. In 1985 he filed an Equal Employment Opportunity (EEO) complaint with the USMS alleging racial

discrimination because he had "received a harsh reprimand" and transfer "ostensibly as punishment for having misused a government car." *Id.* at 81. From 1989 to 1992 Fogg was assigned to a task force that tracked fugitives. Twice during his time on the task force he was not given his regularly scheduled performance rating and he did not receive an expected promotion from the GS-12 to the GS-13 level. Fogg was eventually promoted to GS-13, but by 1993 he had been "stripped of most of his task force supervisory responsibilities" and was "out of the field and in a desk job." *Id.* at 82. All this occurred with his 1985 EEO complaint still unresolved.

Experiencing "severe psychological stress," Fogg stopped working in March 1993. In December of that year the USMS gave Fogg a "fitness-for-duty" examination and in November 1994 ordered him back to work; Fogg reported to work but left after a "few hours." *Id.* He did not return to work and did not comply with two subsequent directives to appear for a fitness-for-duty examination. In 1995 the USMS dismissed Fogg for insubordination and he appealed to the Merit Service Protection Board (MSPB), which upheld his dismissal as lawful.

Fogg then sued the USMS. A jury found the agency had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, by subjecting him to a racially hostile work environment from 1985 until his dismissal in 1995 and by discriminating against him on account of his race in 12 of the 13 instances he had alleged. The jury awarded $4,000,000 in compensatory damages, which the district court remitted to $300,000 in accordance with the cap placed upon damages by the 1991 Amendments to Title VII, *id.* § 1981a(b)(3)(D). The court granted in part and denied in part Fogg's subsequent motion for equitable relief: It awarded him back pay, "retroactive promotion and benefits at the [GS-13] level from November 21, 1991," the date upon which the 1991

Amendments became effective, to July 27, 1992, and at the Grade 14 level from that date through the date of his dismissal in 1995, but denied his request to expunge the record of his dismissal and for reinstatement, front pay, and back pay after the date of his dismissal because the court "adhered to the MSPB's finding that the dismissal was valid," *Fogg*, 407 F. Supp. 2d at 84.

On appeal we reversed and remanded the district court's order denying Fogg's motion for equitable relief, explaining:

> The jury found for Fogg on all the issues[,] as to which its verdict is binding. It also responded to special interrogatories with findings that disparate treatment and/or retaliation motivated both the order requiring Fogg to report for a fitness-for-duty-examination in 1995 and Fogg's subsequent dismissal .... Yet the district court appears explicitly to have rejected those findings in deciding that equitable relief was not appropriate.

*Fogg v. Ashcroft*, 254 F.3d 103, 110 (2001). The district court had "suggested the possibility of a reconciliation between its own findings and those of the jury .... But the court never explained how the two sets of findings could be squared." *Id.* We therefore directed the district court to "reconsider [Fogg's] claims for equitable relief in light of a correct understanding of the issue preclusive effect of the jury's verdict." *Id.* at 114.

On remand the district court concluded the jury had found for Fogg on the "single-motive" or "pretext" theory of discrimination, as provided in 42 U.S.C. § 2000e-2(a)(1), and not on a "mixed-motive" theory under § 2000e-2(m). Using the single-motive theory, a plaintiff proves an unlawful employment practice pursuant to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as

explicated in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981): If the plaintiff proves by a preponderance of the evidence that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination [based upon his race]," *id.* at 253, or, as in this case, was subject to adverse employment decisions based upon his race, *see, e.g.*, *Porter v. Natsios*, 414 F.3d 13, 18 (D.C. Cir. 2005), then the burden of production shifts to the defendant to rebut that inference with "evidence of a legitimate reason" for its decision; the plaintiff, of course, retains the burden of persuasion. *See id.* at 18.

Using the mixed-motive theory, a plaintiff can establish an unlawful employment practice by showing that "discrimination or retaliation played a 'motivating part' or was a 'substantial factor' in the employment decision," *id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)), "without proving that an impermissible consideration was the sole or but-for motive for the employment action." *Id.* at 19.[*] In a mixed-motive case 42 U.S.C. § 2000e-5(g)(2)(B) provides the employer with a "limited affirmative defense" that "does not absolve it of liability, but restricts the remedies available to a plaintiff." *Porter*, 414 F.3d at 19 (quoting *Desert Palace*, 539 U.S. at 94). More particularly, if the plaintiff makes out a violation under § 2000e-2(m), but the defendant "demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor," then the district court may grant declaratory or injunctive relief and attorney's fees, but "shall not award damages or issue an order requiring any ... reinstatement, hiring, promotion, or payment." 42 U.S.C. § 2000e-5(g)(2)(B); *see Desert Palace*, 539 U.S. at 94

---

[*] A plaintiff may also, of course, use evidence of pretext and the *McDonnell Douglas* framework to prove a mixed-motive case. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 99-102 (2003).

6

("available remedies [under § 2000e-5(g)(2)(B)] include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs").

The district court found the jury instructions were ambiguous as to whether this was a single-motive or a mixed-motive case but the post-trial proceedings clarified that the parties and the trial judge had treated it as a single-motive case. The Government had argued in its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure that Fogg's case "falls far short of what is necessary to prove that the proffered reason for [his] termination (insubordination) was a pretext for discrimination and retaliation." *Fogg*, 407 F. Supp. 2d at 86. The district court therefore determined to "continue to treat [the case as a pretext case] in accordance with the law of the case doctrine." *Id.* Proceeding upon that basis, the district court reasoned that the jury's findings "as to disparate treatment and/or retaliation necessarily mean that it determined that race motivated the USMS's actions in [the] twelve specific instances where it found liability"; and, the jury's findings of fact being binding upon the court, the MSPB's determination that Fogg had been lawfully dismissed for insubordination — to which the trial judge erroneously had "adhered" — did not prevent the district court from awarding equitable relief under § 2000e-5(g)(2)(B). *Id.*

The district court went on to award Fogg various forms of equitable relief: (1) expungement from his employment record of his dismissal for insubordination; (2) back pay, as before, for the period from the effective date of the 1991 Amendments to his dismissal in 1995; and, because the jury found racial discrimination motivated the orders leading to Fogg's dismissal and the court thought it "reasonable to infer that, absent the USMS's impermissible actions, Fogg would have continued to be an employee of the USMS," *id.* at 89, (3) back pay from his

dismissal until the date of the court's order in July 2005. The court rejected the Government's arguments that Fogg had failed to mitigate his loss of wages and that his receipt of worker's compensation should prevent him from recovering back pay, on the ground advanced by Fogg that any effort he might have made to find comparable employment would have been futile as long as his USMS personnel record showed he had been dismissed for insubordination. The district court also increased the award of back pay by 14% to offset the "adverse tax consequences of a lump sum award." *Id.* at 91. The court denied reinstatement and "front pay," that is, the amount Fogg would earn from continued employment by the USMS in the months and years following entry of the court's order. *Id.* at 92-93.

The Government appeals the award of back pay and the 14% gross up. Fogg cross-appeals the court's refusal of front pay.

## II. Analysis

The Government argues the district court abused its discretion in awarding Fogg back pay because the court (1), based upon the unfounded distinction between a "single-motive" and a "mixed-motive" case under Title VII, did not allow the USMS to raise the "same-action" defense; (2) scaled the award up to the GS-14 level from July 1992 onward; and (3) "grossed up" the award to offset taxes. In his cross-appeal Fogg argues the district court erred in denying him front pay on the grounds that he (1) had not established a link between the discrimination against him and his putative disability and (2) had "unclean hands" by virtue of having misrepresented himself as a deputy U.S. Marshal after he had been fired.

In reviewing a decision regarding equitable relief from a violation of Title VII, we "consider[] whether the [d]istrict

[c]ourt was clearly erroneous in its factual findings and whether it abused its traditional discretion to locate a just result in light of circumstances peculiar to the case." *Porter*, 414 F.3d at 17 (internal quotation marks and citation omitted). In the latter regard, we consider whether the district court "failed to consider a relevant factor" or "relied on an improper factor," and whether "the reasons given reasonably support the conclusion" reached. *Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

## A. Back Pay

1. *Statutory interpretation*. The Government first argues the district court erred by distinguishing between a single-motive and a mixed-motive case because Title VII sets but one standard for liability and under that standard a defendant, in order to preclude liability for monetary relief beyond attorney's fees and costs, need show only that it would have taken the same action regardless of the plaintiff's race. The Government also argues the district court "erred by confusing the definition of those practices that are prohibited" in § 2000e-2(a) with the subsection that "actually sets forth how a violation is established, § 2000e-2(m)."[*] In the Government's view,

---

[*] Subsection 2000e-2(a)(1) provides (emphases added):

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race*, color, religion, sex, or national origin.

Subsection 2000e-2(m) provides (emphases added):

> Except as otherwise provided in this subchapter, an unlawful

§ 2000e-2(a) is merely the "definition" of an unlawful employment practice, whereas § 2000e-2(m) provides the standard for liability. For the reasons that follow, we disagree with both points.

On its face Title VII provides alternative ways of establishing liability for employment practices based upon the impermissible use of race or other proscribed criteria — one in § 2000e-2(a), which has been in the law since 1964, and another in § 2000e-2(m), which the Congress added in 1991, *see* Civil Rights Act of 1991, Pub. L. No. 102-166, § 107(a), 105 Stat. 1071, 1075, in response to the Supreme Court's decision in *Price Waterhouse*. *See Desert Palace*, 539 U.S. at 94. In *Price Waterhouse* the Court held that an employer could "avoid a finding of liability [under § 2000e-2(a)(1)] ... by proving that it would have made the same decision even if it had not allowed [an impermissible factor] to play" a role in its thinking. 490 U.S. at 244-45 (plurality opinion) (footnote omitted). If the Government is correct that § 2000e-2(m) now provides the "single standard" for establishing an unlawful employment practice, then it must be because the 1991 Amendments somehow repealed the standard in effect theretofore. But nothing on the face of the 1991 addition suggests a case may no longer be brought under § 2000e-2(a) — as they have been since 1964 — and repeals by implication are very much disfavored, *see TVA v. Hill*, 437 U.S. 153, 189-90 (1978).

The Government attempts to avoid the interpretive norm against implied repeals by describing the change wrought by the addition of § 2000e-2(m) as converting § 2000e-2(a) from a

employment practice is established when the complaining party demonstrates that *race*, color, religion, sex, or national origin *was a motivating factor* for any employment practice, even though other factors also motivated the practice.

standard of liability to a definition, but the effect is the same in that an option previously open to plaintiffs would be foreclosed without the Congress having spoken to the issue. Therefore, we cannot infer from the addition of § 2000e-2(m) the implicit repeal of § 2000e-2(a) as a standard for establishing liability in preference to the more straightforward inference that § 2000e-2(m) adds an additional way of establishing liability. *See Desert Palace*, 539 U.S. at 94 (stating that § 2000e-2(m) "establishes an alternative for proving that an 'unlawful employment practice' has occurred") (dictum).

We note also that no Court of Appeals, and only one district court, has interpreted Title VII, as amended, as the Government would have us do. *Compare Dare v. Wal-Mart Stores, Inc.*, 267 F. Supp. 2d 987, 990-92 (D. Minn. 2003) (concluding that after *Desert Palace*, § 2000e-2(m) applies to single-motive claims), *with, e.g.*, *Carey v. Fedex Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 915 (S.D. Ohio 2004) (criticizing and declining to follow *Dare*). Indeed, this court, albeit in a case where the point was not contested, viewed the "mixed motive" framework of § 2000e-2(m) as an alternative rather than the exclusive way of establishing liability. *See Porter*, 414 F.3d at 18 (describing two distinct frameworks for liability and characterizing the 1991 Amendments as "provid[ing] standards *for mixed motive cases*") (emphasis added); *cf. Desert Palace*, 539 U.S. at 94 n.1 (expressly leaving open question "when, if ever, [§ 2000e-2(m)] applies outside of the mixed-motive context").

In sum, the district court properly concluded both that there are alternative ways of establishing liability under Title VII and that the "same action" showing is a defense to damage liability only under the mixed-motive theory of § 2000e-2(m). The remaining question is whether the district court abused its discretion in concluding the case was litigated under the single-motive theory of § 2000e-2(a).

The district court explained that the Government could not — after the jury had returned its verdict and the Government had filed a post-trial motion for judgment as a matter of law in which it treated the case as one involving a single motive — switch positions and argue on remand the case really involved mixed motives. *Fogg*, 407 F. Supp. 2d at 86. We note also that the trial court had denied the motion on the same basis, *see id.* ("the jury obviously inferred from the evidence ... that occult racism was more likely the reason than any other for Fogg's misadventures") (quoting Mem. & Order (July 1, 1999) at 6). It is clear, therefore, the district court did not abuse its discretion in concluding the case was tried as a single-motive case.

2. *Duration and level of back pay*. The Government next argues the district court abused its discretion in awarding back pay from Fogg's dismissal in 1995 until the entry of judgment in 2005. The Government posits first that such an award should be made only to a plaintiff who, unlike Fogg, is entitled to reinstatement but whose reinstatement the district court deems inadvisable. The Government also characterizes the district court's decision to run back pay to the date of judgment as "arbitrary."

Fogg parries this thrust with the Government's own acknowledgment that "[s]everal courts have held ... back pay awards can run to the date of judgment." *See, e.g.*, *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986) ("the court should compute the backpay award from the date of the discriminatory act until the date of final judgment"). Indeed, the Government cannot muster a single case holding an award of back pay to the date of final judgment was an abuse of discretion. The best the Government can do is to cite cases holding the district court did not abuse its discretion by awarding back pay for a more limited period. *See, e.g.*, *Daniel v. Loveridge*, 32 F.3d 1472, 1477-78 (10th Cir. 1994) (no abuse

of discretion in running award from dismissal only to date judgment was initially entered where judgment was later vacated but re-entered after remand). The bottom line is: No abuse of discretion either way, no surprise, and no cigar.

Alternatively, the Government argues the back pay period should have ended in 1999 when Fogg said in a court filing he was unable to return to work, from which the Government argues he had either become disabled or voluntarily retired, *see, e.g.*, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 168 (2d Cir. 1998) ("backpay period ends prior to judgment ... if the plaintiff has theretofore retired"). The district court, however, did not find Fogg had retired voluntarily or became disabled as of 1999, notwithstanding the Government's suggestion at one point that Fogg's receipt of Worker's Compensation so implied — the court's rejection of which the Government has not appealed. Hence, the court did not abuse its discretion in declining to end the back pay period in 1999.

Relatedly, the Government argues the "record does not support a finding that [Fogg] would have been promoted to the [GS-14 level] *on a permanent basis* absent discrimination." What the record does show is that the jury specifically found the USMS's failures to promote Fogg first to the GS-13 and then to the GS-14 level were in each instance "motivated by race." *See Fogg*, 407 F. Supp. 2d at 89. In the absence of any record evidence suggesting the latter promotion would have been for some reason only temporary, and the Government points to none, it is quite impossible to say the district court abused its discretion in treating the withheld promotion as permanent. Indeed, on this record the court likely would have abused its discretion if it had obliged the Government.

Finally, the Government argues Fogg failed to mitigate his damages because he was not reasonably diligent in seeking other

suitable employment.  *See* 42 U.S.C. § 2000e-5(g); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982).  Of course, the "burden of establishing facts in mitigation of the back pay liability is ... upon the violator," *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1134 (D.C. Cir. 1999) (internal quotation marks and citation omitted), here the Government.

We approach this issue cognizant of the Supreme Court's teaching that "the unemployed or underemployed [Title VII] claimant need not go into another line of work, [or] accept a demotion." *Ford Motor*, 458 U.S. at 231.  As for opportunities in Fogg's line of work, the district court accepted Fogg's self-evidently plausible assertion that because his employment record showed the USMS had dismissed him for insubordination, "any efforts to find a comparable law enforcement position would have been futile."  407 F. Supp. 2d at 90.  The Government, notwithstanding that it bears the burden of proving failure to mitigate, simply ignores this point.  Lacking any evidence to the contrary, therefore, the district court fairly inferred Fogg's failure to mitigate his damages by finding other police work was attributable to the Marshals Service's having terminated him purportedly for cause, and hence did not abuse its discretion in preventing the Government from profiting from its own wrongful conduct.

3.  *"Gross Up" of back pay*.  The Government also argues the district court abused its discretion by "grossing up" its award of back pay by 14% in order to relieve Fogg of the adverse tax-consequences associated with recovering multiple years of pay in a single year; most of the award will be taxed at a higher rate than would have applied had the income been received year by year.  As the Government points out, the gross up conflicts with our decision in *Dashnaw v. Peña*, 12 F.3d 1112, 1116 (1994), in which we explained:  "Absent an arrangement by voluntary settlement of the parties, the general rule that victims of

discrimination should be made whole does not support 'gross-ups' of backpay to cover tax liability.  We know of no authority for such relief."

Fogg would have us distinguish *Dashnaw* on either of two grounds:  (1) it was "clearly ... a case where the size of the award and the lack of delay" did not call for a gross up; and (2) the district judge in this case, sitting by designation on the court of appeals, had been a member of the panel that decided *Dashnaw* and she presumably saw no inconsistency between the present case and that precedent.  Neither point is convincing.

First, *Dashnaw* was based upon the "complete lack of support in existing case law for tax gross-ups," *id.* at 1116, not upon the lack of delay or the size of the award in that particular case.  Second, the district court in this case, in concluding that a gross up was appropriate because the litigation was "protracted," *Fogg*, 407 F. Supp. 2d at 91, did not distinguish (or even acknowledge) *Dashnaw* and instead relied solely upon the Tenth Circuit's earlier and directly contrary decision in *Sears v. Atchison, Topeka & Santa Fe Railway, Co.*, 749 F.2d 1451, 1456 (1984).  The district court's failure to consider a facially applicable precedent of this circuit certainly qualifies as a "fail[ure] to consider a relevant factor," *Peyton*, 287 F.3d at 1126, and was therefore an abuse of discretion.  On the basis of binding circuit precedent, we reverse the judgment of the district court insofar as it increased Fogg's back pay award to account for his higher tax liability.

B.  Front Pay

In his cross-appeal Fogg "reluctantly" argues the district court erred in refusing to award him front pay, that is, prospective compensation from the date of judgment until the date Fogg is eligible to retire.  Front pay may be awarded to a

Title VII plaintiff who cannot work because of "psychological injuries suffered ... as a result of the discrimination" in suit, or "[i]n cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).

The district court gave two grounds for denying front pay in this case: (1) Fogg failed to establish a causal link between his purported disability ("stress") and the discrimination against him; and (2) he had "unclean hands" because, in testimony before the Congressional Black Caucus and on his website, he had misrepresented himself as a deputy U.S. Marshal after he had been discharged. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"). Because the latter ground for decision was well within the district court's equitable discretion, *see id.* at 815 (unclean hands doctrine "necessarily gives wide range to ... court's use of discretion in refusing to aid" litigant so tainted), we need not address the former ground in order to affirm the district court's denial of front pay.

### III. Conclusion

We affirm the judgment of the district court insofar as it awards the plaintiff back pay and denies him front pay. We reverse the judgment to the extent it awards the plaintiff a "gross up" to offset the adverse tax consequences of a lump sum award. The case is remanded to the district court for the entry of a judgment in accordance herewith.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

While I have my reservations about whether this case was in fact tried as a "single motive" case,[1] I concur in the judgment because the defendant originally moved for judgment as a matter of law and "treated the case as one involving a single motive" and then—presumably too late—"switch[ed] positions and argue[d] on remand the case really involved mixed motives." Maj. Op. at 11. I write separately on the "same action" issue—which comes up only in a "mixed motives" case and therefore is inapplicable here—to set down how I believe it should be analyzed and applied.

The "same action" showing has been labeled an "affirmative defense" by various circuit courts since it was codified in the Civil Rights Act of 1991.[2] *See, e.g.*, *Fields v. N.Y. State Office*

---

[1]At the time the case was tried, the district judge appears to have treated it as a "mixed motives" case. *See* Tr. 2/25/2000 at 9 (while jury found USMS discriminated against Fogg, district judge found Fogg "was validly dismissed from the Marshals Service for insubordination" and stated "I am not sure that [the two conclusions] are altogether inconsistent"); *see also Fogg v. Ashcroft*, 254 F.3d 103, 111 (D.C. Cir. 2001) ("Because it is unclear exactly what effect the court gave to the jury's findings, we remand the equitable claims to the district court so that it may reconsider the matter consistent with the law of issue preclusion."). We conclude today that the trial judge was incorrect based on a different district judge's characterization of the case as "single motive" on remand. *See Fogg v. Gonzalez*, 407 F. Supp. 2d 79, 86 (D.D.C. 2005) ("Considering the parties and the trial court agreed previously that this case is a pretext case, the court will continue to treat it as such in accordance with the law of the case doctrine."). I am not as certain as my colleagues that the district judge on remand accurately read the trial and post-trial record.

[2]The characterization appears to come from the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). There

*of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 117 (2d Cir. 1997) ("[A]n instruction on the affirmative defense of dual motivation is not required in all cases . . . ."). In *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Supreme Court in dicta described the showing as a "limited affirmative defense," *id.* at 94, and in *Porter v. Natsios*, 414 F.3d 13 (D.C. Cir. 2005), we adopted the High Court's description, *id.* at 19 (mixed motives framework of 1991 Act "provid[es] the employer with a 'limited affirmative defense' under § 2000e-

---

the Court stated that section 2000e-2(a)(1) "meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations," *id.* at 241 (plurality opinion), but that an employer could avoid liability altogether by establishing that it would have made the same employment decision absent any discriminatory motive, *id.* at 242. In his plurality opinion, Justice Brennan declared, "[T]he employer's burden is most appropriately deemed an affirmative defense." *Id.* at 246. The Congress, however, changed the nature of the mixed motives framework by limiting relief rather than foreclosing liability. *See* H.R. Rep. No. 102-40(I), at 19 (1991) ("[W]here two independent contributing factors, one discriminatory and the other nondiscriminatory, were present, the *remedies* available to the complaining party will be *limited* where the employer establishes that it would have made the same adverse employment decision even absent the discriminatory contributing factor. . . . However, the presence of a discriminatory factor would *still establish a Title VII violation* . . . ." (emphases added)); *cf. Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) (Federal Rule of Civil Procedure 8(d) "specifies that averments as to the amount of damage which defendant does not deny in his answer are not deemed admitted. This provision indicates that the Federal Rules do not consider limitations of damages affirmative defenses . . . ." (emphasis omitted)), *cert. denied*, 485 U.S. 992 (1988). *But cf. Simon v. United States*, 891 F.2d 1154 (5th Cir. 1990) (damages limitation an affirmative defense); *Jakobsen v. Mass. Port Auth.*, 520 F.2d 810 (1st Cir. 1975) (same).

5(g)(2)(B)." (quoting *Desert Palace*, 539 U.S. at 94)). I believe, however, that labeling the "same action" showing an affirmative defense has created more confusion than clarity.

"An affirmative defense *will defeat the plaintiff's claim* if it is accepted by the district court or the jury." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1270 (2007) (emphasis added) (citing *Hartford Fire Ins. Co. v. Annapolis Bay Charters*, 69 F. Supp. 2d 756 (D. Md. 1999)). In other words, an affirmative defense absolves the defendant of liability. The "same action" showing, on the other hand, "does not absolve [an employer] of liability, but restricts the remedies available to a plaintiff." *Desert Palace*, 539 U.S. at 94.[3] That is, if an employee "proves a violation under section 2000e-2(m)" and the employer demonstrates that it "would have taken the same action in the absence of the impermissible motivating factor," a court "may grant declaratory relief, injunctive relief . . . , and attorney's fees and costs" but may not award "damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C. § 2000e-5(g)(2)(B). Because the "same action" showing limits the available court-ordered relief, I believe that it is more analogous to a damages

---

[3]The fact that *Desert Palace*'s "limited affirmative defense" language appears in the same sentence that concludes that the employer who successfully makes the "same action" demonstration is nonetheless not relieved of liability but instead has limited exposure to relief may at first seem contradictory. *See Desert Palace*, 539 U.S. at 94 ("[W]ith respect to 'a claim in which an individual proves a violation under section 2000e-2(m),' the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff."). But I read the *Desert Palace* language to emphasize the "limiting" effect of the same action showing rather than to define precisely the nature of the showing.

cap like Title VII's cap, *id.* § 1981a(b)(3),[4] than to an affirmative defense—the court is constrained in awarding equitable relief if the employer demonstrates that it would have taken the same employment action in the absence of any discriminatory motive.[5] Accordingly, I believe the "same

---

[4]Section 1981a(b)(3)(D) provides:

The sum of the amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages . . . shall not exceed, for each complaining party —

. . .

**(D)** in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D). The damages cap, like the "same action" showing, was enacted as part of the Civil Rights Act of 1991. Pub. L. 102-166, 105 Stat. 1071, 1072 (1991).

[5]The "same action" language—enacted, to repeat, as part of the 1991 Act—is set forth in section 2000e-5(g)(2)(B) as follows:

**(B)** On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

**(i)** may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

action" showing need not be raised until the remedy stage of the proceedings.[6] *See Johnson v. Brock*, 810 F.2d 219, 223 (D.C. Cir. 1987) ("[I]n Title VII cases the questions of statutory violation and appropriate statutory remedy are conceptually distinct. . . . When a statutory violation is established, the case proceeds to the remedy phase.") (internal quotation omitted); *cf. Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 112 (D. Conn. 2000) ("No plaintiff claiming damages under Title VII can complain of unfair surprise, prejudice, or lack of opportunity to respond when confronted with [the statute's] limitation of damages, because the limitation is part of the same statutory scheme under which the plaintiff has brought his or her claim.").

Moreover, characterizing the "same action" showing as a

---

        **(ii)** shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment . . . .

42 U.S.C. § 2000e-5(g). Section 2000e-5(g)(2)(B) in no way manifests that the respondent's "demonstrat[ion]," if successful, constitutes a "defense." *Id.*

[6]In *Porter*, we found it "unnecessary to decide whether the 'same action' defense under § 2000e-5(g)(2)(B) is an issue reserved for the jury." 414 F.3d at 19. The district court in *Porter* had denied the respondent's requested jury charge on the same action showing. *Id.* at 16. *Porter* noted that "dicta in various cases indicate that the 'same action' defense is a factual issue typically decided by the jury," *id.* at 21 (citing *Desert Palace*, 123 S. Ct. at 2153, 2154; *Borgo v. Goldin*, 204 F.3d 251, 257-58 (D.C. Cir. 2000); *Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182, 1187 (11th Cir. 1999)). But *Porter* upheld the *district court's* determination of the "same action" showing "as part of its assessment of the appropriate equitable relief," *id.*, and as "not inconsistent with the jury verdict," *id.*

6

limitation on equitable relief indicates to me that 42 U.S.C. § 2000e-2(a)(1)—which provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race"—and 42 U.S.C. § 2000e-2(m)—which provides that "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice"—are best characterized as evidentiary—not liability—alternatives. *Cf.* Maj. Op. at 9. That is, if the fact-finder (whether judge or jury) determines that discrimination was *a* "motivating factor" in an employment decision, the employer is liable, 42 U.S.C. § 2000e-2(m), but the employee's remedies are limited if it is determined that the employer would have taken the same action in the absence of the impermissible factor, 42 U.S.C. § 2000e-5(g)(2)(B). If, however, the fact-finder (whether judge or jury) decides that discrimination *alone* motivated the decision, the employer is, again, liable but equitable relief is not so limited. Thus, the fact-finder's view of the evidence—and not simply how the parties frame their arguments—ultimately dictates whether the "same action" determination need be made. *See Porter*, 414 F.3d at 20 (jury charge manifested jury found mixed motives and thus district court did not err in addressing "same action" showing).