# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2926/2930

_____

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | * * * | |
| Plaintiff/Appellant, | * * | |
| Roberta M. Hollins, | * * | Appeals from the United States District Court for the |
| Intervenor-Plaintiff/ Appellant, | * * | Eastern District of Missouri. |
| v. | * * | |
| Con-Way Freight, Inc., | * * | |
| Defendant/Appellee. | * | |

_____

Submitted: June 15, 2010
Filed: September 22, 2010

_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Roberta Hollins and the Equal Employment Opportunity Commission appeal the district court's[1] grant of summary judgment in favor of defendant Con-Way Freight, Inc. The EEOC filed this action claiming that Con-Way failed to hire

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Ms. Hollins because of her race in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e to 2000e-17. After the court allowed Ms. Hollins to intervene, she added claims of race discrimination in violation of 42 U.S.C. § 1981 and Missouri state law. We affirm the district court's grant of summary judgment in favor of Con-Way on the federal claims and remand the state-law claim with directions to dismiss it without prejudice.

Ms. Hollins heard from a friend about a possible job opening at Con-Way's office in Poplar Bluff, Missouri. Her friend's husband, who worked for Con-Way, arranged for Ms. Hollins to meet with the branch's service center manager, Kenneth Gaffney. Mr. Gaffney told Ms. Hollins that he was seeking permission from the region manager, Kevin Beer, and the vice president of operations to create a position for a part-time customer service representative. He interviewed Ms. Hollins for the job and had her complete an application, on which she disclosed two misdemeanor shoplifting convictions. Mr. Gaffney promised to let her know when he obtained authorization to create the position.

Mr. Gaffney testified that he was very impressed by Ms. Hollins and very interested in hiring her. In a discussion with Mr. Beer about adding the customer-service position, Mr. Gaffney said that he had the "ideal candidate" in Ms. Hollins. Mr. Beer, upon learning that Ms. Hollins was black, cautioned Mr. Gaffney that he would be "opening up a can of worms" by hiring her and that he "probably [didn't] want to go that route." After Mr. Gaffney obtained approval to interview candidates and select one for the job, he again interviewed Ms. Hollins and post-dated her original written application. During the second interview, Mr. Gaffney asked Ms. Hollins how she would respond if derogatory racial comments were made in the workplace and stated, "When I told my boss about you, he told me not to hire you because if I hired you that I was just asking for the NAACP." After completing the interviews, Mr. Gaffney decided that Ms. Hollins and another applicant, Angela Patterson, who is white, were his best candidates. He preferred Ms. Hollins, but

testified that he continued to consider Ms. Patterson in order to have a "backup plan." Each woman attested that Mr. Gaffney had told her individually that she (the affiant) had the job. Mr. Gaffney told Ms. Hollins that he had gone "to bat for [her]" and that the position was hers.

Mr. Gaffney then violated company policy by sending Ms. Hollins and Ms. Patterson to be drug tested. Con-Way's hiring policy states that a manager is not authorized to send a candidate for a drug test or to make a conditional offer of employment until the personnel department runs a criminal background check and approves the chosen candidate. If the personnel department disqualifies a candidate based on the background check, the candidate cannot be hired. The personnel department, pursuant to company policy, automatically disqualified any candidate with a theft-related conviction on her application or background check.

Before choosing a candidate to submit to the personnel department for consideration, Mr. Gaffney was terminated. When Ms. Hollins did not hear from Mr. Gaffney about the drug-test results, she called his office and learned that he was no longer there; Mr. Beer answered the phone and said that he was the region manager and was not doing any hiring at that time. When she told him that she had already been hired and had taken a drug test, he said that he knew nothing about that and would "check into it and get back to [her]," but she did not hear from him. When she called again, an employee whom she had met during the interview process told her that if Mr. Gaffney was replaced, she would "make sure [Ms. Hollins's] application was on top."

Some time later, Anthony Godwin contacted Mr. Gaffney's replacement, Gary Sellers, and told him that Mr. Gaffney had promised him the job as a part-time customer-service representative. After Mr. Sellers received approval to fill the position, he interviewed and hired Mr. Godwin. Ms. Hollins then filed a complaint with the EEOC that ultimately resulted in this lawsuit.

-3-

On all of the plaintiffs' claims, the district court held that there was no direct evidence of race discrimination because Mr. Gaffney continued to consider Ms. Hollins for the position even after Mr. Beer's comment about "opening up a can of worms" by hiring her, and because Mr. Gaffney's replacement was unaware of Ms. Hollins's application when he hired Mr. Godwin. The court also held that the plaintiffs' federal claims could not succeed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework because Ms. Hollins's theft convictions rendered her unqualified for the position. (In addition to the two misdemeanors, Con-Way later discovered that Ms. Hollins did not disclose two felony theft convictions that had been pardoned.)

We review a district court's grant of summary judgment *de novo*. *Philips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). Although we view the facts and draw all reasonable inferences in the light most favorable to the non-movant, we will uphold the grant of summary judgment if the evidence would not permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

I.

Because the plaintiffs' Title VII claim and Ms. Hollins's § 1981 claim rely on "parallel, substantially identical, legal theories of recovery," we analyze them in the same way. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir.1997). To survive summary judgment on a claim based on so-called direct evidence of racial discrimination, the plaintiff must produce evidence (which may be circumstantial) "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *McCullough v. University of Ark. for Med. Sciences*, 559 F.3d 855, 860 (8th Cir. 2009) (internal quotation marks and citation omitted). In this case, the evidence is insufficient to support a finding of a causal link between the comments made by Mr. Beer and Mr.

Gaffney and Con-Way's failure to hire Ms. Hollins. The plaintiffs argue that but for Mr. Beer's comment about "opening up a can of worms," Mr. Gaffney would have moved forward more rapidly in hiring Ms. Hollins. This argument, however, ignores the fact that Mr. Gaffney did not have authority to hire Ms. Hollins (or anyone else) without first obtaining the personnel department's approval following a background check. Even if Mr. Gaffney had attempted to hire Ms. Hollins, Con-Way's policy of automatically disqualifying applicants with theft-related convictions would have resulted in Ms. Hollins's application being rejected. Because Ms. Hollins would not have been hired regardless of the discriminatory animus, the plaintiffs cannot establish a causal link between the alleged discriminatory animus and the decision not to hire her. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006), *cert. denied*, 550 U.S. 904 (2007).

The plaintiffs maintain that Con-Way's evidence did not establish the existence of their alleged policy regarding theft-related convictions as a matter of law, but we believe that a reasonable jury would have to conclude that such a policy was in place. Con-Way produced evidence that within the span of eighteen months it had disqualified twenty-eight applicants solely because of theft-related convictions; that no employees working at the Poplar Bluff service center had convictions on their record; and that its designated corporate representative had personally disqualified "dozens and dozens" of applicants because of theft-related convictions. The plaintiffs argue that a reasonable jury could conclude that the policy did not exist because it was not in writing, but they do not cite any legal authority for the proposition that a policy must be in writing to be effective.

The plaintiffs also point to a comment that Mr. Gaffney made to Ms. Hollins that she should not worry about the misdemeanor convictions because Con-Way "won't go back that far" anyway. The district court excluded this statement as inadmissible hearsay, but the plaintiffs argue that it constitutes a party admission under Fed. R. Evid. 801(d)(2)(D). We have held that party admissions must concern

a matter within the scope of employment of the person making the statement. *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636 (8th Cir. 2007). Here, Mr. Gaffney testified that he was not involved in the criminal background checks and was not given specific reasons when the personnel department disqualified an applicant; we cannot, therefore, say that the district court abused its discretion in concluding that Mr. Gaffney's comment was outside the scope of his employment. Even if the statement were admissible, moreover, the same lack of knowledge that rendered it inadmissible would render it insufficient to allow a reasonable jury to infer that Con-Way did not have a policy of automatically disqualifying applicants with theft-related convictions. Because a reasonable jury would conclude that such a policy existed, the plaintiffs cannot establish the requisite link between the discriminatory comments and Con-Way's failure to hire Ms. Hollins.

The EEOC contends that under 42 U.S.C. § 2000e-5(g)(2)(B), Con-Way's policy regarding theft-related convictions, even if proven, would limit the plaintiffs' available remedies but could not serve as a complete defense to liability. Section 2000e-5(g)(2)(B) provides that if a defendant can "demonstrate[] that it would have taken the same [employment] action in the absence of the impermissible motivating factor," the plaintiffs' available remedies are restricted to declaratory and injunctive relief and certain attorney's fees. Section 2000e-2(m), enacted concurrently with § 2000e-5(g)(2)(B), provides an alternative way for plaintiffs to establish a Title VII violation – the mixed-motive approach – in addition to the single-motive approach available under § 2000e-2(a). *See Fogg v. Gonzales*, 492 F.3d 447, 452-54 (D.C. Cir. 2007). But it is important to recognize that Con-Way did not offer a motive for failing to hire Ms. Hollins: It merely said that Mr. Gaffney did not send her name forward and that after he was terminated it simply did not consider her application. If this is true, then racial considerations played no part in the failure to hire Ms. Hollins, and if it is false then Ms. Hollins might well prevail but not on a mixed-motive basis. Because § 2000e-5(g)(2)(B) by its own terms applies only to "a claim in which an individual proves a violation under § 2000e-2(m)," we read it to be inapplicable in a

single-motive case such as this one. (The Supreme Court has explicitly left open the question of "when, if ever, [§ 2000e-2(m) and § 2000e-5(g)(2)(B)] appl[y] outside of the mixed-motive context." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 n.1 (2003).) The district court therefore properly granted summary judgment in favor of Con-Way on the plaintiffs' claim based on direct evidence of racial discrimination. And since we have concluded that the mixed-motive amendments to Title VII do not apply here, we need not decide whether they apply in § 1981 actons.

The plaintiffs' attempts to establish a *prima facie* case under *McDonnell Douglas* fail for a similar reason. The *McDonnell Douglas* burden-shifting framework requires a plaintiff to establish a *prima facie* case of discrimination by proving that she is a member of a protected class, was qualified for the position that she sought, and was denied the position in favor of someone outside the protected class. *Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 868-69 (8th Cir. 2009). Ms. Hollins, while satisfying the other requirements, cannot establish that she was qualified for Con-Way's open position because, as we noted above, a theft-related conviction renders an applicant unqualified for any position with the company.

## II.

Ms. Hollins also maintains that Con-Way discriminated against her in violation of the Missouri Human Rights Act (MHRA). *See* Mo. Rev. Stat. §§ 213.010 to 213.137, 213.041. Section 213.055.1(1)(a) prohibits an employer from failing to hire or otherwise discriminating against an individual based on race. The Missouri Supreme Court has observed that the MHRA's "safeguards are not identical to the federal standards and can offer greater discrimination protection." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-19 (Mo. 2007). In particular, the court noted that the MHRA defines "discrimination" to include "*any* unfair treatment based on race ... as it relates to employment." *Id.* at 819 (quoting Mo. Rev. Stat. § 213.010(5)) (emphasis added in *Daugherty*). Under the MHRA, a plaintiff therefore need not "prove that discrimination was a substantial or determining factor in an

employment decision," only that it was a "contributing factor." *Id.* at 820; *see also Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664-65 (Mo. 2009). Missouri courts have defined "a contributing factor" as one "that contributed a share in anything or has a part in producing the effect." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (internal quotation marks and citations omitted).

Viewing the facts in the light most favorable to the plaintiffs, Mr. Beer and Mr. Gaffney discussed Ms. Hollins's race, in the context of discussing applicants for the open position, as a reason not to offer her the job. Further, Mr. Gaffney testified that he would have submitted Ms. Hollins's name to fill the open position and begun the process of hiring her if his superior, Mr. Beer, had not discouraged him from hiring a black person. But Ms. Hollins does not claim that this discriminatory conduct, if proved, would be actionable: Her claim is that Con-Way denied her a position because of her race.

After careful study, we are unsure how the Missouri courts would view this claim. For one thing, it is unclear whether those courts would regard Ms. Hollins's ultimate ineligibility as a potential supervening cause of Con-Way's failure to hire her, so that any contribution to the causal mix that Mr. Gaffney's improper motive might have made to that failure would have been cut off. For another thing, even assuming that this claim could survive the causation difficulty, we have discovered no guidance in the Missouri law on what kinds of damages a claim of this sort could support since Ms. Hollins would not have been hired anyway. In the circumstances, we think that the better course is to allow the state courts to decide the matter since "the claim raises ... novel [and] complex issue[s] of State law." 28 U.S.C. § 1367(c)(1); *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 477 (8th Cir. 2009) (en banc), *cert. denied*, 130 S. Ct. 628 (2009).

## III.

For the reasons indicated, we affirm the judgment of the district court on the

federal claims and remand Ms. Hollins's state-law claim with directions to dismiss it without prejudice.

_____