## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

and

**James Edstrom, Plaintiff–Intervenor,**

v.

## HIBBING TACONITE COMPANY, Defendant.

### Civil No. 09–0729 (RHK/RLE).

United States District Court,
D. Minnesota.

Dec. 7, 2009.

Jean P. Kamp, Equal Employment Opportunity Commission, Chicago, IL, Jessica A. Palmer–Denig, Laurie A. Vasichek, Equal Employment Opportunity Commission, Minneapolis, MN, for Plaintiff.

Lawrence P. Schaefer, Benjamin R. Elwood, Schaefer Law Firm, LLC, Minneapolis, MN, for Plaintiff–Intervenor.

Donald R. Gilbert, Jessica L. Post, Fennemore Craig, PC, Phoenix, AZ, R. Thomas Torgerson, Hanft Fride PA, Duluth, MN, Mary G. Balazs, Cliffs Natural Resources, Cleveland, OH, for Defendant.

## ORDER

RAYMOND L. ERICKSON, Chief Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's Motion for Leave to File a Second Amended Answer. See, *Docket No. 24.* On September 29, 2009, the Court granted Defendant's Motion for Relief to file a Reply Brief, see *Docket No. 42,* and we conducted a Hearing on the Motion on October 15, 2009, at which time, the Plaintiff Equal Employment Opportunity Commission ("EEOC") appeared by Laurie A. Vasichek, Esq., the Plaintiff–Intervenor James Edstrom ("Edstrom") appeared by Benjamin R. Elwood, Esq, and the Defendant Hibbing Taconite Company ("Hibbing Taconite") appeared by R. Thomas Torgerson, Esq. For reasons which follow, we deny Hibbing Taconite's Motion.

### II. *Factual and Procedural Background*

This action arises out of a Complaint, which was filed on March 31, 2009, by the EEOC. See, *Docket No. 1.* The Complaint was filed as an action under Title I of the Americans with Disabilities Act, *Title 42 U.S.C. § 12112* ("ADA"), and claims that Edstrom is substantially limited in the major life activities of hearing and speaking. See, *Amended Answer, Docket No. 6,* at ¶ 7. The EEOC alleges that Hibbing Taconite discriminated against Edstrom by initially failing to interview him for an employment position, on account of his disabilities, by failing to provide him with effective reasonable accommodations during the application process, and by rejecting him, because of his disabilities, for positions as to which he was qualified. See, *Complaint, Docket No. 1.* The EEOC requests a permanent injunction, a directive that Hibbing Taconite institute and carry out policies, practices, and programs, for equal employment opportunities, so as to eradicate the effects of any past or present unlawful employment practices, together with an award of backpay, and "other affirmative relief." *Id.*

Hibbing Taconite filed an Answer to the EEOC's Complaint on June 1, 2009, in which it asserted the following seven (7) affirmative defenses: the failure to state a claim; an unsupported request for relief; a "direct threat" defense; a "legitimate, nondiscriminatory, business reasons" defense; a use of tests which are work-related and consistent with business necessity defense; and a reservation to plead additional affirmative defenses. See, *Docket No. 4.* On June 10, 2009, Hibbing Taconite filed an Amended Answer in which it alleged the additional affirmative defense of laches. See, *Docket No. 6.* Thereafter, on July 31, 2009, the EEOC produced its initial discovery disclosures to Hibbing Taconite. See, *Memorandum in Support of Motion ("Hibbing Taconite Memo"), Docket No. 25* at p. 2.

According to Hibbing Taconite, in examining those disclosures it determined that four (4) new affirmative defenses were now justified. *Id.* On September 1, 2009, Hibbing Taconite filed a Motion for Leave to File its

Second Amended Answer. See, *Docket No. 24*. Hibbing Taconite now seeks to assert the following four (4) additional affirmative defenses: unclean hands; a violation of "the mediation privilege;" a tainted investigation and cause finding defense; and a failure to conciliate in good faith defense. See, *Proposed Second Amended Answer, Docket No. 25–1*. Hibbing Taconite bases those new defenses on its assertion that the EEOC improperly used information, that was obtained during at least one (1) confidential mediation session, which was conducted by phone on March 20, 2006, between the EEOC, Edstrom, and Hibbing Taconite. Hibbing Taconite alleges that the EEOC breached the confidentiality of that mediation session by including statements, which were purportedly made during that telephone call, in the initial EEOC charge, and by basing its probable cause finding, at least in part, on that improper information.

In May of 2007, Edstrom amended his initial charge in order to assert further allegations. See, *Memorandum in Opposition to Motion ("EEOC Memo"), Docket No. 33*, at p. 3. Upon receiving that Amended Charge, Hibbing Taconite informed the EEOC that the document included information that was obtained from a confidential mediation session. The EEOC then issued another Amended Charge that did not contain the assertedly confidential statements. See, *Proposed Second Amended Answer*, supra at ¶ 26. Thereafter, Edstrom provided more information to the EEOC investigators, from the same telephone call of March 20, 2006. See, *EEOC Memo*, supra at p. 5. The EEOC has informed Hibbing Taconite that it does not intend to use those assertedly confidential statements in this litigation. *Id.* at p. 7; see also, *Reply to Motion ("Reply"), Docket No. 43* at p. 15. Consistent with that representation, the allegedly confidential statement does not appear in the EEOC's Complaint. See, *Docket No. 1*.

The EEOC filed a Memorandum in Opposition to Hibbing Taconite's Motion to Amend, as well as a Declaration of Laurie A. Vasichek ("Vasichek Declaration"), with exhibits, see, *Docket Nos. 33, 34*, in which it argues that Hibbing Taconite's Motion

should be denied on futility grounds, because the Trial will adjudicate the EEOC's claims, and therefore, Hibbing Taconite has not been prejudiced by the assertedly confidential disclosures. In addition, the EEOC contends that the telephone conference, on March 20, 2006, was not a mediation session to which confidentiality attaches. See, *EEOC Memo*, supra. In its Reply, Hibbing Taconite maintains that the newly proposed affirmative defenses are not futile, and should be permitted. Moreover, Hibbing Taconite disputes the EEOC's characterization of the conference call, on March 20, 2006, as not constituting a mediation session, and asks that the Court not consider the Vasichek Declaration, and its exhibits.

### III. *Discussion*

A. *Standard of Review.* Rule 15(a), Federal Rules of Civil Procedure, provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasons—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); see also, *Thompson–El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989).

Here, the Pretrial Order set a deadline of September 1, 2009, as the date by which all Motions to amend the pleadings, or add parties, were to be filed, and the Hearing thereon completed. See, *Docket No. 17*. While Hibbing Taconite filed its Motion to Amend on September 1, 2009, the Hearing thereon

was not completed until October 15, 2009. See, *Docket Nos. 24 and 52.* As a consequence, Hibbing Taconite's Motion to Amend is untimely.

 Where, as here, the deadline for the amendment of the pleadings has expired, the propriety of an extension, so as to allow consideration of a Motion to Amend, "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." *Alholm v. American S.S. Co.*, 167 F.R.D. 75, 77 (D.Minn.1996). The requirements of Rule 16(b), Federal Rules of Civil Procedure, have been summarized as follows:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes—1983 Amendment; see also, *Julian v. Equifax Check Services, Inc.*, 178 F.R.D. 10, 16 (D.Conn.1998). It hardly bears mentioning therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. *Luigino's Inc. v. Pezrow Cos.*, [178 F.R.D. 523], at 525 [ (D.Minn.1998) ].

*Scheidecker v. Arvig Enterprises, Inc.*, 193 F.R.D. 630, 631–32 (D.Minn.2000), quoting *Archer Daniels Midland v. Aon Risk Services, Inc.*, 187 F.R.D. 578, 581–582 (D.Minn. 1999).[1]

The Eighth Circuit has reiterated that Rule 16(b) provides the appropriate standard in the context of Motions to Amend that arise after the deadline for such Motions has expired, by stating, as follows:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., *Hopkins v. Saunders*, 199 F.3d 968, 974 (8th Cir.1999), cert. denied, 531 U.S. 873, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); *Gray v. Bicknell*, 86 F.3d 1472, 1481 (8th Cir.1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999), cert. denied sub nom *Rainy Lake One Stop, Inc. v. Marigold Foods Inc.*, 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

*Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir.2001).

 The good cause standard is an exacting one, and requires a demonstration that the Scheduling Order "cannot reasonably be met despite the diligence of the party seeking the extension." *North Star Mutual Ins. Co. v. Zurich Ins. Co.*, 269 F.Supp.2d 1140, 1144 (D.Minn.2003), citing *Rule 16(b), Federal Rules of Civil Procedure.*

As was expressed, in *Rouse v. Farmers State Bank of Jewell*, 866 F.Supp. 1191, 1198 (N.D.Iowa 1994):

> A scheduling order is an important tool in controlling litigation. *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 510 (S.D.Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly

---

1. Local Rule 16.3 serves to reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is " * * * intended to discourage modifying pretrial schedules unless good cause has been shown." *Local Rule 16.3, Advisory Committee Notes.*

disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). Scheduling Orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.*

The Court also noted that "the flouting of discovery deadlines causes substantial harm to the judicial system." *Id.,* citing *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir. 1990). As a result, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" *Alholm v. American S.S. Co.,* supra at 79, quoting *Rouse v. Farmers State Bank of Jewell,* supra at 1199.

B. *Legal Analysis.* While the EEOC did not object to Hibbing Taconite's Motion as being untimely, we have an inherent interest in preserving our Scheduling Orders, so as to preserve the integrity of the Court's processes, as well as to enforce the command of Rule 1, Federal Rules of Civil Procedure, that civil actions be administered so as to assure the just, speedy, and inexpensive, resolution of matters venued in Federal Court. Hibbing Taconite argues that it has good cause to amend its Amended Answer because it received the EEOC's initial disclosures on July 31, 2009, and filed its Motion to Amend just one (1) month later, after reading through those disclosures. See, *Hibbing Taconite Memo,* supra at p. 3.

■ In light of the short time frame between Hibbing Taconite's receipt of the EEOC's initial disclosures, Hibbing Taconite's efforts to file the Motion before the deadline, and the time afforded to Hibbing Taconite to prepare and file a Reply brief, we exercise our discretion to hear Hibbing Taconite's Motion to Amend and to consider the Motion on its merits. Stated differently, Hibbing Taconite has satisfied the good cause standard which is the threshold through which such Motions must pass.

■ 1. *Standard of Review.* In assessing Motions to Amend pleadings, we are obligated to examine whether granting such an amendment would be a futile act. See, *DeRoche v. All American Bottling Corp.,* 38 F.Supp.2d 1102, 1106 (D.Minn.1998) ("Although we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted."), citing *Humphreys v. Roche Biomedical Laboratories, Inc.,* 990 F.2d 1078, 1082 (8th Cir.1993); *Weimer v. Amen,* 870 F.2d 1400, 1407 (8th Cir.1989); see also, *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa,* 269 F.3d 932, 936 (8th Cir. 2001)("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim"), cert. denied, 536 U.S. 925, 122 S.Ct. 2593, 153 L.Ed.2d 781 (2002). For a Motion to Amend an Answer, the asserted defenses are futile if they would not survive a Motion to Dismiss under Rule 12(b)(6) or (f), Federal Rules of Civil Procedure. *Medical Graphics Corp. v. Hartford Fire Ins. Co.,* 171 F.R.D. 254, 257 (D.Minn.1997).

"When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." *Riley v. St. Louis County,* 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999), citing *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 556 (8th Cir.1998); see also, *Maki v. Allete, Inc.,* 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. See, *Maki v. Allete, Inc.,* supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." [2] *Young v. City of St. Charles,* 244

2. We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct.

F.3d 623, 627 (8th Cir.2001), citing *Breedlove v. Earthgrains Baking,* 140 F.3d 797, 799 (8th Cir.1998), cert. denied, 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998); see also, *Maki v. Allete, Inc.,* supra at 742; *Helleloid v. Independent School Dist. No. 361,* 149 F.Supp.2d 863, 866–67 (D.Minn.2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles,* supra at 627, citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." *Id.,* citing *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998); see also, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Hibbing Taconite seeks to amend its Amended Answer in order to assert four (4) additional affirmative defenses. The Eighth Circuit has not specifically ruled on whether affirmative defenses must meet the same pleading requirements as claims, and a survey of decisions in the District Courts of this Circuit reveals somewhat murky waters in the Courts' varying approaches. See, e.g., *Robertson v. LTS Management Services LLC, et al.,* 642 F.Supp.2d 922, 932, 934–35 (W.D.Mo.2008)(applying a "cannot succeed under any circumstances" test to newly proposed defenses, but requiring a proposed amendment to include the factual bases for equitable defenses); *Wells v. Farmers Alliance Mut. Ins. Co.,* 2009 WL 2836502 at *3 (E.D.Mo. August 28, 2009)(finding defense

sufficiently pled, even though a required prejudice element was not pled, because "defenses are acceptable as long as they are either 'sufficient as a matter of law or [ ] fairly presen[t] a question of law or fact which the court ought to hear'"), citing *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir.1977); *Lemery v. Duroso,* 2009 WL 1684692 at *2–3 (E.D.Mo., June 16, 2009)(applying a "cannot succeed under any circumstances" test, but striking a defense where the defendants failed to allege facts to support the amendment); *Williamson v. Unifund CCR Partners,* 2009 WL 187702 at *3, *4 (D.Neb., January 23, 2009)(denying Motion to Strike equitable defenses, which the defendants admittedly had no facts to support, but which would otherwise have been waived, because "motions to strike affirmative defenses are granted only when the court is 'convinced that there are no questions of fact * * * and that under no set of circumstances can the defense succeed'"), citing *Puckett v. United States,* 82 F.Supp.2d 660, 662–63 (S.D.Tex.1999); *U.S. ex rel. Rille v. Sun Microsystems, Inc.,* 2008 WL 4756170 at *6 (E.D.Ark., October 28, 2008)(affirmative defenses need only put the plaintiff on notice that such a defense is "in play * * * not necessarily how that defense applies"), citing *Mark v. Government Properties Trust, Inc.,* 2007 WL 1319712 at *2 (D.Neb., April 5, 2007); *Champion Bank v. Regional Development, LLC, et al.,* 2009 WL 1351122 at *2–*3, *4 (E.D.Mo., May 13, 2009)(applying *Twombly* pleading standard to Counterclaim, and a "cannot succeed under any circumstances" test to affirmative defenses).

In contrast, the Court of Appeals for the Fifth Circuit has long held that affirmative defenses are subject to the same pleading requirements as a Complaint, so as to afford fair notice to the plaintiff. See, *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir.1999), citing *Automated Medical Laboratories Inc. v. Armour Pharmaceutical Company,* 629 F.2d 1118, 1122 (5th Cir.1980). The Seventh Circuit has followed the same approach.

1955, 1969, 167 L.Ed.2d 929 (2007)(The standard in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted

pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* Here, we apply the Supreme Court's "accepted pleading standard."

See, *Heller Financial, Inc. v. Midwhey Powder Company, Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989)("Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure.").

District Courts in other Districts have also held affirmative defenses to the same pleadings standards as apply to claims and Counterclaims. See, e.g., *Tracy ex rel. v. NVR, Inc.*, 2009 WL 3153150 at *7 (W.D.N.Y., Sept. 30, 2009)("[T]he *Twombly* plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f)," and therefore, "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy"); *Teirstein v. AGA Medical Corp.*, 2009 WL 704138 at *6–*8 (E.D.Tex., March 16, 2009)(applying *Twombly* standard to Motion to Strike affirmative defenses).

■ We are persuaded by the Fifth Circuit's reasoning in *Woodfield v. Bowman*, supra, and by the developing trend of the District Courts, to require the defendant to plead an adequate factual basis for affirmative defenses, where the basis is not apparent by the defense's bare assertion. As a consequence, we evaluate Hibbing Taconite's Second Amended Answer for futility with the *Twombly* pleading standards in mind, and we conclude that Hibbing Taconite has pled enough facts to meet the minimum pleadings standards. For reasons which follow, we find that the four (4) newly proposed affirmative defenses are futile as a matter of law.

2. *Legal Analysis.* As a preliminary matter, the EEOC has submitted a Declaration, that is supported by several exhibits, with its Memorandum in Opposition. See, *Docket Nos. 33–34.* In its Memorandum, the EEOC challenges the accuracy of Hibbing Taconite's factual assertions which serve as the underpinning of the four (4) affirmative defenses. See, *EEOC Memo*, supra at p. 13, n. 9. Of course, in evaluating the sufficiency of pled defenses or claims, the Court reviews the pleadings on their face—staying within their four (4) corners. See, *Trostel & Sons Co. v. Notz*, 536 F.Supp.2d 969, 974–75 (E.D.Wis.2008)(recognizing the general rule that a Rule 12(f) Motion is decided on the pleadings, but treating the Motion as for Summary Judgment, because the Record had been developed by the parties as undisputed facts).

■ Of course, a Court may consider "materials that are necessarily embraced by the pleadings." See, *Porous Media Corporation v. Pall Corporation*, 186 F.3d 1077, 1079 (8th Cir.1999), citing *Piper Jaffray Companies v. National Union Fire Insurance Company*, 967 F.Supp. 1148, 1152 (D.Minn.1997). Materials are necessarily embraced by a pleading if they are "mentioned or incorporated by reference." See, *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992). Therefore, we restrict our review to the exhibits which relate only to the statements made during the telephone call of March 20, 2006, and we disregard all of the other exhibits as presenting facts that are not properly before us in any consideration of the sufficiency of the proposed Second Amended Answer. See, *Fraenkel v. Messerli & Kramer, P.A.*, 2004 WL 1765309 at *2 (D.Minn., July 29, 2004).[3]

**3.** The EEOC argues that, because Hibbing Taconite seeks to assert the "quasi-jurisdictional" defense of failing to conciliate in good faith, we may properly examine extrinsic evidence as to that defense. See, *EEOC Memo*, supra at p. 10. The EEOC cites to *EEOC v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 245 n. 3 (N.D.Ill.1980), in support of its assertion that failure to conciliate is "quasi-jurisdictional." In *Sears*, the Court notes that a complete failure to conciliate may be a jurisdictional matter, but "[t]he sufficiency of the conciliation effort presents a question of whether the court should stay the proceeding for further conciliation, **not whether it has jurisdiction over the cause.**" *Id.* at 262 [emphasis added], citing *EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir.1978).

In a much more recent case, the Fifth Circuit, following the interpretive approach of the United States Supreme Court, "conclude[d] that the EEOC's conciliation requirement is a precondition to suit but not a jurisdictional prerequisite." See, *EEOC v. Agro Dist., LLC*, 555 F.3d 462, 469 (5th Cir.2009), citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), for the proposition that, "[i]f the Legislature clearly states that a threshold limitation [like the 15–or–more employee requirement for liability under Title VII] on a statute's scope shall count as jurisdictional, then

As noted, the EEOC challenges all four (4) of Hibbing Taconite's newly proposed affirmative defenses on grounds of futility, and we examine them in the order in which Hibbing Taconite has listed them in its proposed Second Amended Answer, commencing with the defense of "unclean hands."

a. *Unclean Hands.* While Hibbing Taconite does not assert specific facts to support an unclean hands defense, it is clear, from the proposed Answer as a whole, that the defense is based upon the EEOC's use, in issuing its cause finding, of information that was obtained during the telephone call of March 20, 2006. According to Hibbing Taconite, the affirmative defense is not futile because it is available against the EEOC in this context, and may, at the very least, limit the EEOC's remedies. See, *Reply,* supra at p. 8. In response, the EEOC argues that the Government is not subject to an unclean hands defense when it is acting in the public's interest. See, *EEOC Memo,* supra at p. 14.

Unclean hands is an equitable defense which prevents a party from maintaining a suit in equity. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814–15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)("[Unclean hands] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant," and thus, "while 'equity does not demand that its suitors shall have led blameless lives' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.") [citations omitted].

A survey of cases on the question discloses that Courts have been hesitant to allow the defense of unclean hands against the Government when it acts in the interest of the public. See, e.g., *EEOC v. Recruit U.S.A., et al.,* 939 F.2d 746, 752–53 (9th Cir.1991)(while

acknowledging that "clean hands" doctrine applies to the Government as any other litigant, the Court found that "the substantial public interest permeating this case warrants a departure from the 'clean hands' doctrine"); *EEOC v. Collegeville/Imagineering,* 2007 WL 2051448 at *4 (D.Ariz., July 16, 2007) (granting EEOC Summary Judgment on unclean hands defense because of the public interest involved). District Courts in the District of Columbia have gone so far as to hold that unclean hands is not a valid defense against the Government acting in its public function, as a matter of law. See, *United States v. Philip Morris, Inc. et al.,* 300 F.Supp.2d 61, 75 (D.D.C.2004); *S.E.C. v. Gulf & Western Industries, Inc., et al.,* 502 F.Supp. 343, 348 (D.D.C.1980). At least one (1) District Court in the Eastern District of New York has similarly prohibited an unclean hands defense against the Government acting in the public interest. See, *United States v. New York Metropolitan Transportation Authority,* 2006 WL 708672 at *2 (E.D.N.Y., January 12, 2006).

However, the Court of Appeals for the Eighth Circuit has not addressed the question. In *U.S. ex rel. Zissler v. Regents of the University of Minnesota,* 992 F.Supp. 1097, 1114 (D.Minn.1998), the District Court concluded that it was within the Court's equitable discretion to allow a defense of unclean hands against the Government, although the Court declined to exercise that discretion in that case. Other District Courts have determined that the unclean hands defense is available against the Government in its public function, at least under some circumstances. See, *EEOC v. Catholic Healthcare West,* 530 F.Supp.2d 1096, 1108 (C.D.Cal.2008)(finding "that Defendant has presented no evidence that would support a finding of unclean hands"); *EEOC v. Exxon Corp.,* 1 F.Supp.2d 635, 649 (N.D.Tex.1998) (denying the EEOC's Motion for Summary

courts and litigants will be duly instructed" but, without such language, "courts should treat the restriction as nonjurisdictional in character." See also, *EEOC v. Crownline Boats,* 2005 WL 1618809, at *2 (S.D.Ill., July 5, 2005) ("Neither good faith conciliation, nor conciliation in general, are **jurisdictional** prerequisites to this Court's

authority over this matter.")[emphasis in original]. In light of this more recent case authority, Hibbing Taconite's asserted affirmative defenses do not raise an issue of jurisdiction, and an examination of extrinsic evidence, beyond what is encompassed in the pleadings, would be inappropriate under a futility analysis.

Judgment on an unclean hands defense for failure to provide a basis to do so).[4]

■ Here, the EEOC plainly exercises public interest through its enforcement of the ADA, but we need not determine whether a defense of unclean hands should be unavailable, as a matter of law, against the EEOC in its public capacity, because Hibbing Taconite has not pled a viable defense on that issue. To survive a Motion to Dismiss an equitable defense of unclean hands against the EEOC, Hibbing Taconite must sufficiently plead that the EEOC acted in bad faith, or inequitably, in its dealings with Hibbing Taconite. See, *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* supra at 814–15, 65 S.Ct. 993. Hibbing Taconite must also plead that the bad faith, or inequity, was in regards to the matter in the case, id., or that it prejudiced Hibbing Taconite's defense of the matter. See, *S.E.C. v. The Electronics Warehouse, Inc.,* 689 F.Supp. 53, 73 (D.Conn. 1988).

■ To show that the misconduct was relative to the matter, a defendant must demonstrate that the misconduct has a "direct nexus" to the right being enforced in the suit. See, *EEOC v. Bay Ridge Toyota, Inc.,* 327 F.Supp.2d 167, 172 (E.D.N.Y.2004), citing *S.E.C. v. Electronics Warehouse, Inc.,* supra at 73; *United States v. Hughes Ranch, Inc., et al.,* 33 F.Supp.2d 1157, 1171 (D.Neb.1999)("[B]efore the 'unclean hands' doctrine can apply, the government's improper conduct must be related 'to the matter in

which [the government] seeks relief.' "), quoting *Recruit U.S.A., Inc,* supra at 752.

■ The case law on nexus is limited in the context of government action, but does reflect that, for an unclean hands defense to succeed, the Government's improper action must be related to its acquisition of the right in suit that it seeks to enforce. See, *Pierce v. Apple Valley, Inc.,* 597 F.Supp. 1480, 1486 (D.C.Ohio 1984) ("[P]ossible misconduct by the government during the investigation appears to be sufficiently related to the government's acquisition of the right upon which it sues that the Court cannot conclude that it is beyond the scope of the unclean hands doctrine," but refraining from deciding the issue); *S.E.C. v. Electronics Warehouse,* supra at 73 (no nexus between the alleged misconduct, and the SEC's allegations against the defendant, or the evidence it sought to introduce against him, because it was in relation to his business relationships, not the investigation or quality of the evidence).[5] As a result, the nexus requirement for an unclean hands defense necessitates that the inequitable conduct be related to an issue that is the subject of the Complaint.

■ Here, Hibbing Taconite has not alleged a legally sufficient nexus, and has not suffered prejudice in its defense of the case. The EEOC has agreed not to use the information that Hibbing Taconite alleges emanated from the mediation sessions as evidence,[6] and that information does not appear

4. In its brief, Hibbing Taconite cites to *Fogg v. Gonzales,* 492 F.3d 447, 456 (D.C.Cir.2007) to support its assertion that unclean hands is an available defense against the Government. *Fogg* concerns an individual plaintiff, who was suing in his own right, for discrimination. *Id.* at 449. As a consequence, *Fogg* is inapposite to the question of whether unclean hands is a viable defense against a claim by the Government acting in its public function.

5. There is a larger body of law on the nexus requirement in the context of private actions, which the Court finds instructive on this point. In a private action, nexus requires that the plaintiff's use of its right, or the acquisition of its right to sue at all, is inequitable. See, *Specialty Minerals, Inc. v. Pluess–Staufer AG, et al.,* 395 F.Supp.2d 109, 112–13 (S.D.N.Y.2005) ("[The defendant's] unclean hands defense is legally insufficient because the misconduct that forms the

basis for the defense is not 'immediate[ly] and necessar[ily] related to the right in suit.' "), citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933), and discussing, *Western Union Telegraph Co. v. MCI Communications Corp.,* 1986 WL 2769 at *2 (S.D.N.Y., February 26, 1986), *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan,* 265 F.Supp.2d 440, 443 (D.Vt.2003), and *Haagen–Dazs v. Frusen Gladje Ltd.,* 493 F.Supp. 73 (D.C.N.Y.1980); see also, *International Motor Contest Ass'n, Inc. v. Staley,* 434 F.Supp.2d 650, 670 (N.D.Iowa 2006)(discussing nexus in a copyright infringement claim).

6. In its Reply, Hibbing Taconite argues that it has been prejudiced in that the EEOC initiated the action, and that Edstrom has "repeatedly stated that information he learned at the mediation caused him serious emotional harm." *Reply,* supra at p. 16. Unclean hands is an equita-

in the Complaint. According to Hibbing Taconite, the EEOC improperly used information, that was allegedly obtained during a confidential mediation session, on "at least two separate occasions," after Hibbing Taconite notified the EEOC that Edstrom had disclosed confidential information. See, *Second Amended Answer*, at ¶ 26. Hibbing Taconite contends that the EEOC then employed the improperly collected information in order to issue its cause finding. See, *Id.* at ¶ 27.

For reasons we subsequently detail, the basis for the issuance of a cause finding is not a justiciable matter in this litigation, since the EEOC must prove, at Trial, that the alleged discrimination against Edstrom did, in fact, occur. Even if we were to exercise our discretion so as to allow an unclean hands defense against the Government in its public function, Hibbing Taconite has not pled a sufficient nexus between the EEOC's alleged conduct, and the allegations

ble defense, available against only equitable remedies. *U.S. v. Hughes*, supra at 1171. To the extent Hibbing Taconite wishes to use its unclean hands defense to reduce damages, the equitable defense is unavailable. Additionally, the prejudice contemplated in *Electronics Warehouse* is to the defendant's ability to defend himself against the complaint, not to the filing of the complaint itself. *S.E.C. v. Electronics Warehouse*, supra at 73.

7. The EEOC discusses the confidentiality provisions of the Administrative Dispute Resolution Act, Title 5 U.S.C. §§ 571–574 ("ADRA"), at length in its brief. See, *EEOC Memo*, supra at 16–19. Hibbing Taconite responds that the ADRA is inapposite because of the EEOC's assurances, to participating parties, that the mediation process is confidential. See, *Reply*, supra at 8, n. 5. Any discussion of the limits and bounds of confidentiality, in this context, is better left to an evidentiary objection, and not to a Motion to Amend so as to assert affirmative defenses. We necessarily must take the factual assertions, as contained in Hibbing Taconite's proposed pleading—namely, that the telephone call on March 20, 2006, was a confidential mediation session—as true for the purposes of this Motion.

8. Hibbing Taconite argues in its Reply that the EEOC's agreement to withdraw the evidence is a "hollow" promise, because of the qualification that, if the information should become otherwise discoverable, the EEOC will use it as evidence. We find the EEOC's qualification to be reasonable. "[T]he mediation privilege does not protect from disclosure 'any evidence otherwise' and independently 'discoverable merely because it

in the EEOC's Complaint, and so we find the unclean hands defense to be futile.

b. *Violation of Federal Mediation Privilege.* Next, Hibbing Taconite seeks to assert an affirmative defense based upon the EEOC's purported violation of a Federal mediation privilege. In its Reply, Hibbing Taconite urges this Court to recognize such a privilege, while the EEOC argues that the Federal mediation privilege has not been recognized in this District, or Circuit, and that the facts do not support Hibbing Taconite's assertion that the statements were made during any mediation sessions.[7] The EEOC states that Hibbing Taconite's affirmative defenses would be better brought as a motion *in limine*, and that, the EEOC having agreed not to use the contested evidence, any asserted breach of that privilege is moot.[8]

Notably, the Federal mediation privilege has not been recognized by either the Eight Circuit, or by the District of Minnesota.[9]

[wa]s presented in the course of' the Mediation." *Sheldone v. Pennsylvania Turnpike Commission*, 104 F.Supp.2d 511, 517 (W.D.Pa.2000), citing *Rule 408, Federal Rules of Evidence*.

9. According to its Reply, Hibbing Taconite contends that we have an independent basis to grant leave to amend on the issue of the mediation privilege; namely, an estoppel based upon the EEOC's distribution of "materials to participants in which [the EEOC] expressly promises that all statements made during the mediation will remain confidential." See, *Reply*, supra at 8–9. It remains unclear, however, if Hibbing Taconite is referring to judicial or equitable estoppel. In *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the United States Supreme Court addressed equitable estoppel, stating that "the government may not be estopped on the same terms as any other litigant," but declining to make a hard-and-fast rule that estoppel may never be employed against the Government.

Judicial estoppel is "a common law doctrine by which a party may be estopped from asserting a position in a legal proceeding that is inconsistent with a position previously taken in the same or an earlier proceeding * * *" and "Judicial estoppel * * * 'may apply against the Government when equitable estoppel would not * * *'" as "[C]ourts construe the doctrine of judicial estoppel narrowly when applied against the Government." *EEOC v. Exxon Corp.*, 1 F.Supp.2d 635, 646 (N.D.Tex.1998) [citations omitted]. Regardless of the legal theory behind Hibbing Taco-

Where the Federal mediation privilege has been recognized, it is an evidentiary privilege, and the remedy for violation of the privilege is suppression of the contested evidence, and not dismissal of the suit. See, *Folb v. Motion Picture Industry Pension & Health Plans, et al.*, 16 F.Supp.2d 1164, 1171 (C.D.Cal.1998), aff'd, 216 F.3d 1082, 2000 WL 420636 (9th Cir.2000) ("The general rule is that the public is entitled to every person's evidence and that testimonial privileges are disfavored."); *Sheldone v. Penn. Turnpike Comm'n*, 104 F.Supp.2d 511, 512 (W.D.Pa. 2000)("In asking this Court to recognize a federal mediation privilege, the Defendant correctly identifies *Federal Rule of Evidence 501* as authority for the creation of evidentiary privileges[.]"); *Microsoft Corp. v. Suncrest Enterprise, et al.*, 2006 WL 929257 at *2 (N.D.Cal., Jan. 6, 2006)(discussing mediation privilege in deciding a Motion to Compel discovery); *In re RDM Sports Group, Inc.*, 277 B.R. 415, 426 (Bkrtcy.N.D.Ga.2002)(the plaintiff urged the Court to adopt a Federal mediation privilege in order to protect from discovery statements, communications, and documents, that were prepared for, or made during a mediation); *Sampson v. The School District of Lancaster*, 262 F.R.D. 469, 480–81 (E.D.Pa.2008)("We need not decide whether to apply a federal mediation privilege or the work product doctrine, because the attorney-client privilege protects [the testimony] here.").

■ The statements on March 20, 2006, which the EEOC has agreed not to use as evidence, and has removed from the charge, are not a part of the Complaint brought by the EEOC. Even if the statements were made in breach of a mediation privilege, the privilege is evidentiary, and not an affirmative defense. Hibbing Taconite has not cited any authority which holds that the remedy for a breach of the Federal mediation privilege is the dismissal of an underlying claim, and our independent search has failed to reveal any. Therefore, the addition of Hibbing Taconite's proposed affirmative defense of a violated mediation privilege presents a

futile act, and we deny that aspect of its Motion.

c. *Tainted Investigation and Probable Cause Finding.* As its proposed tenth affirmative defense, Hibbing Taconite asserts that the EEOC "knowingly received and relied upon confidential information protected by the mediation privilege during its investigation, tainting both its investigation and the cause finding that it issued against Hibbing Taconite." and that "[t]he EEOC violated Hibbing Taconite's rights by conducting its investigation in such a manner and knowingly relying on privileged information to issue a cause finding." See, *Second Amended Answer*, at ¶ 27. In response, the EEOC argues that its investigation, and its probable cause finding, are not reviewable for sufficiency or quality, see, *EEOC Memo*, supra at p. 22, and that any taint is "cured" by the de novo Trial to come. *Id.* at p. 24. According to Hibbing Taconite, however, there is no case law on the subject of the EEOC's use of improperly acquired information, it is "inherently unfair" to allow the EEOC to employ information obtained during the mediation process, and therefore, Hibbing Taconite should be allowed the opportunity to investigate the circumstances. See, *Reply*, supra at pp. 13–14.

■ As a statutory prerequisite to suit, the EEOC must perform an investigation, and Courts will review whether an investigation occurred. See, *EEOC v. NCL America*, 536 F.Supp.2d 1216, 1222 (D.Hawai'i 2008); *EEOC v. CRST Van Expedited, Inc.*, 2009 WL 2524402 at *16 (N.D.Iowa, August 13, 2009). Courts do not, however, review the substance of the EEOC's investigation in order to evaluate the basis of its reasonable cause determination. See, *EEOC v. CRST*, supra at *15–*16 ("[T]he court may not second-guess EEOC's findings in the Letter of Determination[.]"), citing *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir.1984); *EEOC v. NCL America*, supra at 1222 (looking only to whether the EEOC engaged in some investigation, and declining to inquire "into the substance of the EEOC

---

nite's estoppel claim, the alleged violation of a mediation privilege remains an evidentiary matter, not an affirmative defense.

investigation"); *EEOC v. Dial Corp.*, 2002 WL 1974072 at \*5 (D.C.Ill., July 23, 2002)(refusing to review EEOC's reasonable cause finding), citing *EEOC v. Chicago Miniature Lamp Works*, 526 F.Supp. 974, 975 (N.D.Ill. 1981). In the final analysis, the EEOC's finding of reasonable cause has no binding effect on the Trial. *EEOC v. Walner & Associates*, 91 F.3d 963, 968 n. 3 (7th Cir. 1996), citing *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1331 (5th Cir.1991); *EEOC v. St. Anne's Hosp. of Chicago*, 664 F.2d 128, 131 (7th Cir.1981)("A reasonable cause determination is not to adjudicate a claim, but to notify an employer of the Commission's findings.")

Hibbing Taconite has not alleged that the EEOC completely failed to investigate Edstrom's charge of discrimination but, rather, asserts that, in using the information obtained in the mediation session, the EEOC improperly conducted its investigation, thereby resulting in an unfair determination of reasonable cause. Under current case law, however, this is not sufficient as an affirmative defense, as Courts may only review whether the investigation took place in order to determine if the EEOC fulfilled the statutory prerequisites to suit. Whether the determination was made in error is an issue for the Trial, when the EEOC must prove to a fact-finder that the discrimination alleged in fact occurred. As such, Hibbing Taconite's asserted affirmative defense of a tainted investigation and reasonable cause finding, is futile. Therefore, we deny Hibbing Taconite's Motion to Amend as to that proposed defense.

d. *The EEOC's Failure to Conciliate in Good Faith.* In its eleventh asserted defense, Hibbing Taconite alleges that the EEOC did not participate in conciliation in good faith, "because [the EEOC] failed to disclose relevant information to Hibbing Taconite." See, *Second Amended Answer*, at ¶ 28. The EEOC argues that the Court is only permitted to review whether or not the EEOC " 'made an attempt at conciliation'," and not the substance of that conciliation attempt, and that the EEOC has no duty to disclose all of the specific details upon which it finds a violation. See, *EEOC Memo*, supra at p. 25.

The ADA incorporates, by reference, Title VII's procedural requirements. See, *Title 42 U.S.C. § 12117*. Under Section 2000e–5(b), the EEOC must eliminate any alleged unlawful employment practice by "informal methods of conference, conciliation, and persuasion." See, *Title 42 U.S.C. § 2000e–5(b)*; see also, *EEOC v. Preston Hood Chevrolet*, 2009 WL 2489184 at \*2 (S.D.Miss., August 13, 2009). In reviewing the EEOC's conciliation efforts, Courts look to whether the EEOC has conciliated in good faith, and has given the employer an "adequate opportunity to respond to all charges and negotiate possible settlements." See, *EEOC v. UMB Bank, N.A.*, 432 F.Supp.2d 948, 954 (W.D.Mo.2006), quoting *EEOC v. One Bratenahl Place Condominium Association*, 644 F.Supp. 218, 220 (N.D.Ohio 1986). While the substance and details of any settlement offers, or discussions, are not discoverable, the actions and efforts, that are undertaken by the EEOC to conciliate the matter, are discoverable information, and are subject to the Court's review. See, *EEOC v. Lifecare Mgmt. Serv., LLC*, 2009 WL 772834 at \*3 (W.D.Pa., March 17, 2009), citing *EEOC v. Mobil Oil Corp.*, 1973 WL 231 at \*1 (W.D.Mo., September 17, 1973).

When a Court determines that the EEOC has attempted conciliation, but has not done so in good faith, the Court may stay the proceedings, and remand for conciliation efforts to resume. See, *EEOC v. CRST Van Expedited, Inc.*, supra at \* 19 n. 24 ("Had the EEOC not wholly abdicated its role in the administrative process, the court might have stayed the instant action for further conciliation in lieu of dismissal."); *EEOC v. Die Fliedermaus*, 77 F.Supp.2d 460, 467 (S.D.N.Y.1999) (staying proceedings for thirty (30) days due to a failure to conciliate in good faith, where the EEOC had refused to inform the employer of how the EEOC had calculated compensatory damages). Dismissal may also be an appropriate sanction under some extreme circumstances. See, *EEOC v. Agro Dist., LLC*, supra at 469; *EEOC v. CRST Van Expedited, Inc.*, supra at \*19 (dismissing the EEOC's Complaint for a total

failure to investigate, issue reasonable cause finding, or conciliate).

■ The EEOC's conciliation effort "must, at a minimum, make clear to the employer the basis for the EEOC's charges against it." See, *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1260 (11th Cir.2003)[citation omitted]. The EEOC "must (1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." *Id.* at 1259, citing *EEOC v. Klingler Electric Corp.*, 636 F.2d 104, 107 (5th Cir.1981).

■ Here, Hibbing Taconite argues that the EEOC failed to conciliate in good faith by failing "to disclose relevant information." Under the circumstances presented here, the Court agrees with the EEOC, that the conciliation requirement does not necessitate that the EEOC disclose all of the underlying evidence or information to the employer. Rather, the conciliation process requires that the EEOC provide the employer with sufficient information to assure that the employer knows the basis of the charge, and is able to participate in the conciliation process fully. Contrast, *EEOC v. Paramount Staffing Inc.*, 601 F.Supp.2d 986, 990 (W.D.Tenn.2009)(the EEOC had conciliated in good faith because the "outline of the class" was identified, even though the EEOC refused to identify individual members); *EEOC v. Champion Chevrolet*, 2009 WL 2835101 at *7 (D.Nev., Aug. 26, 2009)(the EEOC had conciliated in good faith where the employer had received adequate explanation for the reasonable cause finding and settlement proposal, and that "[t]he EEOC's failure to disclose the identities of potential witnesses should not have affected [the employer's] ability to consider the de-

mand"); and *EEOC v. Equicredit Corporation of America*, 2002 WL 31371968 at *3–4 (E.D.Pa., October 8, 2002)(the EEOC had conciliated in good faith where it refused to disclose the identity of a corroborating witness),[10] with *EEOC v. Die Fliedermaus*, supra at 467; and *EEOC v. First Midwest Bank, N.A.*, 14 F.Supp.2d 1028, 1031 (N.D.Ill. 1998) (the EEOC failed to conciliate in good faith, where it quadrupled money damages request, and failed to provide the employer with any information regarding the class of female employees, thus forcing the employer to attempt to conciliate in an "evidentiary vacuum.").

Here, Hibbing Taconite's allegation, that the EEOC failed to disclose information concerning Edstrom's alleged recitation of statements, which were made during the telephone call of March 20, 2006, simply does not rise to the level of administrative bad faith illustrated by *First Midwest*, or *Die Fliedermaus*. For example, Hibbing Taconite has not alleged that the EEOC's actions prevented Hibbing Taconite from understanding the basis of the charge it faced, nor has Hibbing Taconite alleged that the EEOC gave it an unreasonable amount of time to consider the conciliation offers. Similarly, Hibbing Taconite has not alleged that the EEOC refused to meet with Hibbing Taconite, or refused to respond to Hibbing Taconite's requests. In fact, upon receiving Edstrom's Amended Charge, Hibbing Taconite contacted the EEOC, informed the EEOC that the statements from March 20, 2006, were confidential, and then received a newly Amended Charge without those statements included.

Further, there is nothing in Hibbing Taconite's proposed pleading that alleges that the EEOC's conduct, during the conciliation process, prevented it from receiving the full benefit of the period to resolve the conflict, prior to the EEOC's filing of the Complaint.

10. Hibbing Taconite has expressed concern over any citation to cases, such as *Equicredit*, and *Preston Chevrolet*, where the Courts were deciding Motions for Summary Judgment based upon an expanded Evidentiary Record. We are sensitive to the fact that the Motion before us is a Motion to Amend a Pleading, which evaluated under the standards of a Motion to Dismiss pursuant to Rule 12(b)(6) and (f). The cases in which the Courts were deciding Summary Judg-

ment Motions explain the factual circumstances under which a claim or affirmative defense would be viable, and correlatively, the types of allegations that must be pled for a claim or defense to survive a Motion to Dismiss under Rule 12. Here, we do not evaluate the sufficiency of Hibbing Taconite's factual assertions, but rather, the legal sufficiency of its proposed affirmative defenses, with the relevant case law as our guide.

Moreover, Hibbing Taconite knew that Edstrom had disclosed the statements of March 20, 2006, when the charge was filed, which was well over two (2) years ago. The EEOC's failure to disclose the same information during conciliation cannot now be said to have affected Hibbing Taconite's ability to participate in the conciliation process, especially when the EEOC has agreed not to use that information as evidence in this litigation. Simply stated, Hibbing Taconite's allegation concerning the disclosure of the statements of March 20, 2006, does not go to any of the three (3) prongs that the EEOC must meet in the conciliation process, and therefore, those allegations are futile as a defense in this action.

Given the foregoing, we deny Hibbing Taconite's Motion for leave to file its Second Amended Answer, as each of the newly proposed affirmative defenses is futile as a matter of law.

NOW, THEREFORE, It is—

ORDERED:

That Hibbing Taconite's Motion for Leave to File Second Amended Answer [Docket No. 24] is DENIED.